**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

UNITED STATES OF AMERICA,
Plaintiff-Appellee,

v.

No. 94-5316

ROBERT DONNELL JONES, a/k/a
Donnie,
Defendant-Appellant.

Appeal from the United States District Court
for the District of Maryland, at Baltimore.
William M. Nickerson, District Judge.
(CR-92-261-WN)

Argued: September 29, 1995

Decided: April 30, 1996

Before RUSSELL and WIDENER, Circuit Judges, and
CHAPMAN, Senior Circuit Judge.

_____

Vacated and remanded by unpublished per curiam opinion.

_____

**COUNSEL**

**ARGUED:** Fred Warren Bennett, CATHOLIC UNIVERSITY LAW
SCHOOL, Washington, D.C., for Appellant. Christine Manuelian,
Assistant United States Attorney, Baltimore, Maryland, for Appellee.
**ON BRIEF:** William B. Purpura, Baltimore, Maryland, for Appel-
lant. Lynne A. Battaglia, United States Attorney, Baltimore, Mary-
land, for Appellee.

_____

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

_____

**OPINION**

PER CURIAM:

Appellant, Robert Donnell Jones, pleaded guilty on April 23, 1993 to conspiracy to distribute, and possession with intent to distribute, heroin. Under Jones's written plea agreement, both he and the government agreed to leave open for the district court's determination the quantity of heroin attributable to Jones from the conspiracy, which would be used to determine his base offense level. Shortly before sentencing, both parties further agreed that the government would rely on the testimony of co-operating witnesses from the prior trials of some of Jones's alleged co-conspirators to establish the quantity of heroin attributable to Jones. Those trials were conducted between May and August 1993 before the same district judge who sentenced Jones.

Jones was sentenced on April 7, 1994. The district judge made factual findings in which he attributed 11,700 grams of heroin to Jones, yielding a base offense level of 36 (10-30 kilos). Appellant was given a three-level downward adjustment for acceptance of responsibility, and his criminal history category was 3. Accordingly, the district judge sentenced him to 176 months imprisonment, which was eight months above the low end of the applicable guidelines.

Appellant filed a timely notice of appeal on April 13, 1994. He argues on appeal that the district judge erred in calculating the quantity of drugs attributable to him from the conspiracy. Specifically, Appellant challenges the factual basis for three transactions, which involve a total of 4900 grams of heroin.

After reviewing the transcripts of the witnesses proffered by the government to support the challenged transactions, the court agrees that the evidence does not support the district judge's calculations. Therefore, we vacate the sentence and remand for resentencing consistent with this opinion.

2

I.

The calculation of the quantity of drugs attributable to a defendant is a factual determination to be made at sentencing, and the findings of the district court should be upheld unless they are clearly erroneous. United States v. Goff, 907 F.2d 1441, 1444 (4th Cir. 1990); see also 18 U.S.C. § 3742(e) ("The court of appeals shall give due regard to the opportunity of the district court to judge the credibility of the witnesses, and shall accept the findings of the district court unless they are clearly erroneous. . . .").

The government bears the burden of proving, by a preponderance of the evidence, the quantity of drugs involved. Goff, 907 F.2d at 1444. As this court has previously recognized, "[t]he government may meet its burden by presenting evidence that the court deems sufficient to establish the quantity of drugs attributable to a defendant." United States v. Gilliam, 987 F.2d 1009, 1013 (4th Cir. 1993). Sentencing courts must bear in mind, however, that drug quantity is generally the principal factor in determining the sentencing ranges for drug offenses under the guidelines. The United States Court of Appeals for the First Circuit articulated this concern in United States v. Sepulveda, 15 F.3d 1161 (1st Cir. 1993), cert. denied, 114 S. Ct. 2714 (1994):

> Courts must sedulously enforce the quantum-of-proof rule, for, under the guidelines, drug quantity has a dramatic leveraging effect. Thus, relatively small quantitative differences may produce markedly different periods of immurement. This reality informs the preponderance standard, requiring that district courts must base their findings on "reliable information" and, where uncertainty reigns, must "err on the side of caution."

Id. at 1198 (quoting United States v. Sklar, 920 F.2d 107, 113 (1st Cir. 1990)); see also United States v. Shonubi , 998 F.2d 84, 89-90 (2d Cir. 1993) ("This careful practice is essential where a defendant's sentence depends in such large measure on the amount of drugs deemed attributable to his conduct.").

Where, as here, no seizure of drugs has occurred, the court must approximate the quantity of drugs to attribute to the defendant.

3

U.S.S.G. § 2D1.1 commentary, application n.12. The court must base its approximation on specific evidence, however, and may not resort to speculation, surmise, or conjecture. See Shonubi, 998 F.2d at 90.

II.

Appellant challenges only three of the nineteen drug transactions listed by the government in its sentencing memorandum. Specifically, Appellant challenges the transactions identified as numbers 1, 3, and 5 in the government's papers. We address each of these seriatim.

A.

In transaction number 1, the government alleged that Appellant was responsible for 800 grams of heroin. This amount was based on the testimony of Goodluck Jinanwa at the trial of Romanus Nwaneri. Jinanwa testified that sometime between March and September 1991 Nwaneri delivered heroin to Collins Nnadozie, an alleged supplier of Appellant, "[s]ometimes twice a week" in amounts "[s]ometimes 200 grams." J.A. at 122. To achieve the figure of 800 grams, the government used a one-month period (March 1991) and assumed one delivery per week of 200 grams each. J.A. at 187. The district court agreed with the government's calculation and attributed all 800 grams to Appellant.

After reviewing the relevant portions of the transcript, this court must conclude that Jinanwa's testimony does not support a finding of 800 grams. As Appellant contends, there is no testimony in the record that Jinanwa personally knew that all of the heroin received by Nnadozie from Nwaneri was in turn delivered to Appellant. In fact, the only testimony from Jinanwa regarding the relationship between Appellant and Nnadozie belies the contention that Appellant was Nnadozie's only customer. Jinanwa testified that"Donnie" (Appellant Jones) "was somebody new who he [Collins Nnadozie] was selling some heroin to." J.A. at 121 (emphasis added). This testimony indicates that Nnadozie had other customers than Appellant and that Nnadozie was not selling all of his heroin to Appellant.

To attribute 800 grams to Appellant from Jinanwa's testimony, the district court had to speculate that Appellant received from Nnadozie

4

all of the heroin that Nnadozie received from Nwaneri. The district court's conclusion is missing a necessary link in the chain of permissible inferences. Although the government asserts that the amount of 800 grams represents a conservative estimate of quantity, even that amount is not supported by the record.

B.

With regard to transaction number 3, Appellant challenges 1100 of the 1600 grams of heroin that the district court attributed to him. The government had alleged that Appellant was responsible for 2000 grams, based on the testimony of Gloria Nwosu at the Nwaneri trial. The government based that figure on testimony that Nwosu made 10-12 visits to Collins Nnadozie's house to drop off heroin or pick up money for the drugs. When asked what quantity of drugs she delivered to Nnadozie on any of those occasions, she stated, "Up to 300 grams and 200 grams. The other ones, I don't know exactly what the quantities were." J.A. at 127. The government multiplied 10 visits times 200 grams to achieve the 2000 gram figure alleged in their sentencing memorandum.

The district court found that the government had proven that Nwosu had made at least eight trips and that each trip involved at least 200 grams of heroin. Therefore, the court attributed 1600 grams to Appellant based on Nwosu's testimony. J.A. at 201-02.

Appellant acknowledges that Nwosu's testimony supports a finding of 500 grams attributable to him. She testified to two specific drug transactions in April 1991 involving Appellant: one for 300 grams, and another for 200 grams. However, Appellant challenges the remaining 1100 grams that the district court attributed to him.

As Appellant again argues, there is no evidence in the record that all of the heroin received by Nnadozie was passed on to Appellant. As this court found in connection with transaction number 1 above, that inference is simply not supported by the record.

In addition, Nwosu's testimony is quite vague about precisely how many trips to Nnadozie's house involved heroin. Although she testi-

5

fied about 10-12 visits, she stated that some of those trips merely involved picking up money from a previous delivery of drugs. Also, she testified that a couple of those visits were merely for socializing with Nnadozie. J.A. at 127. The amount of heroin involved in these transactions is also unclear. Nwosu testified that two transactions involved "up to" 200 or 300 grams, but that she did not know precisely what the other quantities were. The district court's assumption that eight transactions of 200 grams each occurred is not supported by the preponderance of the evidence. See United States v. Shonubi, 998 F.2d at 89 (holding that district court erred in calculating drug quantity by multiplying the amount of drugs found on defendant upon his arrest for smuggling heroin times the number of previous trips defendant allegedly made).

C.

Finally, Appellant challenges transaction number 5, for which the district court ascribed 2.5 kilos of heroin to Appellant. That quantity was based on the testimony of Anthony Nwaka at the Nwaneri trial. Nwaka stated that he had delivered heroin to Collins Nnadozie seven or eight times between July and August 1991 and that the "[t]otal sum [was] well over 2.5 kilos." J.A. at 143-44.

Appellant argues that the district court's finding with regard to this transaction is similarly flawed. According to Appellant, Nwaka's testimony supports only one transaction of 200 grams specifically involving Appellant.

Also, as Appellant argued with respect to the other two challenged transactions, there is no evidence that all of the drugs which were delivered to Nnadozie were in turn transmitted to Appellant. Nwaka testified that Romero Nwaneri told him that "Donnie [Appellant Jones] doesn't want to deal with anybody other than Collins [Nnadozie]." J.A. at 144. Although that statement implies that Nnadozie may have been Appellant's sole supplier, it does not imply that Appellant was Nnadozie's only customer. Therefore, the district court erred in attributing to Appellant all 2.5 kilos that Nwaka delivered to Nnadozie.

One consistent problem with the government's proof in all three challenged transactions is that it relied on testimony of witnesses from

6

the trials of several co-conspirators. That testimony focused on the activities of the co-conspirators and not specifically on the activity of Appellant. The involvement of Appellant was only discussed peripherally at the trial of the other co-conspirators. Although both parties agreed that the government would rely on such testimony, that agreement does not relieve the government of the burden of proving drug quantity by a preponderance of the evidence.

III.

For the foregoing reasons, the court determines that the district court was clearly erroneous in calculating the quantity of drugs attributable to Appellant in transactions 1, 3 and 5 for purposes of setting his base offense level. Accordingly, we vacate Appellant's sentence and remand for resentencing consistent with this opinion.

VACATED AND REMANDED WITH INSTRUCTIONS

7